**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| AMANDA HETTINGA | |
| Plaintiff, | Civil Action No.: |
| v. | |
| THE KROGER CO. | |
| Defendant. | **JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

COMES NOW, Plaintiff Amanda Hettinga, and brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, as amended, and the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. Plaintiff alleges that Defendant The Kroger Co. subjected Plaintiff to discrimination based on sex and pregnancy,  and disability, including through its failure to provide a reasonable accommodation,  respectfully showing the Court as follows:

### JURISDICTION AND VENUE

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331 & 1343 and the enforcement provisions of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.

2.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff was employed, and the events underlying this action occurred in Houston County, Georgia, which is located within this judicial district.

## PARTIES

3.

Plaintiff Amanda Hettinga (hereinafter, "Plaintiff" or "Hettinga") is a citizen of the United States and a resident of Georgia.  At all times relevant to this suit, Ms. Hettinga was employed by Defendant The Kroger Co.

4.

At all relevant times, Ms. Hettinga was considered a covered, non-exempt employee under Title VII of the Civil Rights Act, the Americans with Disabilities Act, and the Family and Medical Leave Act

5.

Defendant The Kroger Co. (hereinafter, "Defendant"), is a foreign profit corporation, incorporated under the laws of the State of Ohio, with its principal office located at 1014 Vine St, Tax Dept GO 7, Cincinnati, Ohio 45202. Defendant maintains a regional office in the State of Georgia located at 2175 Parklake Drive, Atlanta, Georgia 30345. Defendant may be served with process upon its registered agent, CSC of Cobb County, Inc., located at 192 Anderson Street SE, Suite 125, Marietta, Cobb County Georgia 30060.

6.

Defendant is engaged in interstate commerce, has an annual revenue in excess of $500,000.00, and has employed in excess of 500 employees, working for at least 20 calendar weeks in 2019 and in prior calendar years.

7.

Defendant is a covered employer within the meaning of Title VII of the Civil Rights Act, the Americans with Disabilities Act, and the Family and Medical Leave Act.

**STATEMENT OF FACTS**

8.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 7, as if the same were set forth herein.

9.

Ms. Hettinga began her employment with Defendant in or about 2015.

10.

Ms. Hettinga was employed with Defendant for approximately four years.

11.

Ms. Hettinga worked for Defendant as a cashier, and by the time of the events that give rise to this Complaint, Ms. Hettinga had unofficially obtained status as a senior cashier and was informally known as a shift leader with some supervisory authority.

12.

For some time, Ms. Hettinga also worked in customer service and as a cashier trainer.

13.

Additionally, Ms. Hettinga was in a leadership role within the store's Uplift Committee.

14.

Until the events that lead to her separation as described herein, Ms. Hettinga had not received any disciplinary actions, including any written warnings or reprimands.

15.

At all times, Ms. Hettinga's performance was exemplary.  Ms. Hettinga far exceeded the work ethic and effort expected of her.

16.

In 2018, Ms. Hettinga found out that she had become pregnant with twins.

17.

Defendant became aware that Ms. Hettinga was pregnant in or about September 2018.

18.

Around this time, Plaintiff told several of her supervisors whom she was acquainted that she would need to take maternity leave around April 2019. This notice was provided as a professional courtesy.

19.

Ms. Hettinga's pregnancy in no way limited her ability to perform the essential functions of her position.

20.

However, after news of Ms. Hettinga's pregnancy spread, some of Ms. Hettinga's supervisors, with whom she was not friendly, began to ask her personal questions about the pregnancy.

21.

For example, Ms. Hettinga's supervisors began to ask Ms. Hettinga about her due date and when she would be going out of work.

22.

As Ms. Hettinga entered into the later term of her pregnancy, she requested that she be placed on light duty, or permitted to work less physically strenuous tasks.

23.

At the same time, Ms. Hettinga made it clear to Defendant that she intended to and wanted to work for as long as possible, up to the point of her delivery date.

24.

There was work available at this Kroger location that Ms. Hettinga was qualified to do that would have accommodated this request of light duty.

25.

Instead of giving Ms. Hettinga lighter duty tasks, Defendant significantly reduced Ms. Hettinga's scheduled work hours.

26.

Prior to Defendant becoming aware of the pregnancy, Ms. Hettinga was scheduled to work between 30 to 35 hours each week.

27.

However, at the beginning of 2019, Ms. Hettinga's scheduled work hours were reduced, against her wishes, to only 12-16 hours a week.

28.

During the same time, no other cashiers with similar experience as Ms. Hettinga had their work hours similarly reduced.

29.

At the time Ms. Hettinga was separated from Defendant she had accrued approximately six months of paid leave by way of a combination of short-term disability benefits and paid personal leave that she had accrued.

30.

Defendant was aware that Ms. Hettinga had accumulated this paid leave in anticipation of the birth of her twins.

31.

On or about February 21, 2019, seven months into. Ms. Hettinga's pregnancy, she was terminated.

32.

Ms. Hettinga was called into a supervisor's office, without warning, and was accused by a loss prevention officer of criminal misconduct.

33.

Defendant threatened that, if Ms. Hettinga did not resign immediately, then Defendant would fire her and would call law enforcement officers to have Ms. Hettinga arrested.

34.

The alleged misconduct that Defendant accused Ms. Hettinga of was trivial, not conduct for which Defendant disciplined other workers, and at times entirely baseless.

35.

Specifically, Defendant accused Ms. Hettinga of violating store policy by using her own Kroger Plus card when checking out a customer.

36.

When a customer does not have a customer loyalty card with them, Defendant's policy is to encourage its employees to ask the customer to sign up for a new card or to use a spare card at the register so that the customer is still able to receive a discount.

37.

In the instance at issue, Ms. Hettinga did not have any spare cards at her register and, because of how busy the store was at the time, she grabbed her own Kroger Plus Card and helped the customer complete her purchase.

38.

Ms. Hettinga received no warning about this situation and, when Defendant confronted Ms. Hettinga, it was not interested in hearing her side of the story.

39.

Ms. Hettinga is aware of other employees taking similar actions, with the knowledge of their supervisors, who were not subjected to any disciplinary actions as a result, much less termination.

40.

Prior to Defendant's demand that Ms. Hettinga resign or have law enforcement called, Ms. Hettinga had never had a disciplinary issue.

41.

Moreover, Ms. Hettinga' supervisor, Brittany Stover, later told Ms. Hettinga that around this time Defendant apparently asked Ms. Stover to dig up something that Ms. Hettinga had done wrong so that Defendant could fire her.

42.

After Ms. Hettinga filed her Charge of Discrimination with the EEOC, Defendant, for the first time, also accused Ms. Hettinga of breaking store policy by purchasing marked down baby products, either by purchasing the products while on duty or with some special insider trading-type knowledge of Kroger's products.

43.

Ms. Hettinga only purchased items from Defendant during her breaks or days off, with the single exception.

44.

One day Ms. Hettinga's five-year-old daughter was at the store and brought a small container of popcorn chicken nuggets to Ms. Hettinga's register.

45.

Ms. Hettinga quickly rang up the popcorn chicken and paid for it herself, rather than slow the busy line by taking the time to explain to her daughter that she had to wait and sending her to another register.

46.

Ms. Hettinga paid the full price for the popcorn chicken and even kept a receipt reflecting the purchase.

47.

The popcorn chicken cost approximately $1.00.

48.

Moreover, Hettinga did not have special knowledge of Defendant's baby product sales.

49.

Instead, Mr. Sterling Williams, a co-worker of Ms. Hettinga, who was in charge of marking down products, would tell Ms. Hettinga if he *had* marked down a baby product because he was aware of her pregnancy.

50.

Ms. Hettinga would then wait until the end of her shift or one of her off days to check the discount aisle in order to decide if she wanted to purchase the sale items.

51.

In its Position Statement filed with the EEOC, Defendant accused Mr. Williams of marking down baby products too frequently and of informing Ms. Hettinga after he had marked down the products as part of an insider scheme.

52.

However, Defendant never disciplined Mr. Williams for marking down the baby products or for informing Ms. Hettinga when he did so, suggesting that Defendant is not concerned with this conduct, but rather was only interested to the extent that it find a pretextual reason to fire Ms. Hettinga.

53.

After her termination, on March 5, 2019, Defendant sent a letter to Ms. Hettinga, demanding that she repay $200.00 to Defendant, and further accusing her of stealing Defendant's property, without providing any factual basis or explanation for the accusation.

54.

Defendant took this action, not because it actually believed that Ms. Hettinga had engaged in any misconduct, rather in an attempt to deter Ms. Hettinga from pursuing any claims against Defendant.

55.

Several of Ms. Hettinga's coworkers and supervisors indicated their opinion that her termination was improper and based on a discriminatory reason.  Specifically, these individuals had seen many other individuals, who were not pregnant, engage in similar action, but without receiving any or similarly harsh consequences.

56.

Ms. Hettinga was terminated as a direct result of her pregnancy, Respondent's unwillingness to accommodate Ms. Hettinga's light duty request, and because it knew that it would soon be footing the bill for a six-month paid leave, or at least 12 weeks paid maternity leave during her FMLA protected leave period.

<u>Procedural/Administrative Background</u>

57.

On or about April 2, 2019, Ms. Hettinga submitted her Charge of Discrimination to the Equal Employment Opportunity Commission (hereinafter, "EEOC"), alleging that she had been subjected to discrimination based on sex and disability on an ongoing basis since September 2018 and that she was terminated as a result of that discrimination on or about February 21, 2019.  The EEOC assigned Ms. Hettinga the Charge Number 410-2019-04215.

58.

On December 2, 2020, the EEOC issued a Dismissal and Notice of Rights dated December 2, 2020.

59.

Ms. Hettinga has exhausted her administrative remedies and she is filing the instant action within ninety days of the EEOC's issuance of a Dismissal and Notice of Rights.

**COUNT I:**
**DISCRIMINATION BASED ON SEX AND PREGNANCY**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

60.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 59, as if the same were set forth herein.

61.

The Pregnancy Discrimination Act (hereinafter, "PDA") is an amendment to Title VII of the Civil Rights Act of 1964.  Discrimination on the basis of pregnancy, childbirth, or related medical conditions constitutes unlawful sex discrimination under Title VII.  Women affected by pregnancy or related conditions must be treated in the same manner as other applicants or employees who are similar in their ability or inability to work.

62.

The PDA provides that the prohibition against sex-based employment discrimination in § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), applies with equal force to discrimination on the basis of "pregnancy, childbirth, or related medical conditions." *See* 42 U.S.C. § 2000e(k). Further, the PDA provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but

similar in their ability or inability to work." 42 U.S.C. § 2000e(k). The analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits. *Armstrong v. Flowers Hosp., Inc.,* 33 F.3d 1308, 1312–13 (11th Cir.1994).

63.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against or harass any of its employees on the basis of pregnancy or sex. *See* 42 U.S.C. § 2000e-2(a).

64.

As alleged herein, Defendant, and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively.

65.

As alleged herein, Defendant subjected Plaintiff to discriminatory treatment in the form of reducing the hours that Plaintiff was allowed to work, not accommodating her requests for light duty work, and ultimately terminating her because of her pregnancy.

66.

Plaintiff has been injured by Defendant's discriminatory actions, including harassment and hostile work environment, and is entitled to all damages allowed under Title VII of the Civil Rights Act, including attorney's fees and costs of litigation, in an amount to be proven at trial.

**COUNT II:**
**VIOLATION OF**
**THE FAMILY AND MEDICAL LEAVE ACT**

67.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 59, as if the same were set forth herein.

68.

At all times relevant to this Complaint, Defendant was a covered, non-exempt employer pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq.

69.

As alleged herein, Ms. Hettinga worked for a covered employer, had worked for the covered employer for at least twelve months, had at least 1,250 hours of service for the employer during the twelve-month period immediately preceding the requested leave, and worked at a location where the employer had at least 50 employees within 75 miles.

70.

In or about September 2018, Defendant became aware that Plaintiff was pregnant and that she would need to take time off starting in or about April 2019.

71.

Around this time, Plaintiff notified Defendant that she would need to take maternity leave in or about April 2019. This notice was provided as a professional courtesy.

72.

Defendant was aware that Plaintiff had accumulated a significant amount of leave with the intent to use it during her maternity leave including during her FMLA protected leave.

73.

On or about January 2019, Defendant began to reduce Plaintiff's work hours and refused to accommodate her request to be placed on light physical duty.

74.

Defendant did this with the intent of making working conditions unfavorable so that Plaintiff would quit to get a new job so that Defendant did not have to give Plaintiff FMLA leave.

75.

At the same time, Defendant began to ask supervisors to look for any reason to terminate Plaintiff.

76.

Just two months before Plaintiff was scheduled to give birth, Defendant terminated Plaintiff's employment on pretextual grounds, citing minor supposed violations for which Defendant would not normally discipline or terminate an employee.

77.

Since Plaintiff has filed her Charge of Discrimination, Defendant alleged new purported reasons for Plaintiff's termination, which were clearly never a basis for or consideration in Plaintiff's termination.

78.

As of the date of her termination, Plaintiff was an eligible employee entitled to take FMLA leave for her own serious health condition, pursuant to the Family and Medical Leave Act and 29 C.F.R. § 825.113.

79.

Pursuant to the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise or the attempt to exercise, any right provided under this chapter."  29 U.S.C. § 2615(a)(1).

80.

Defendant engaged in prohibited conduct under the FMLA by interfering with, restraining, and denying Plaintiff rights as provided by the Act.

81.

Defendant engaged in prohibited conduct by giving Plaintiff less desirable work with the intent of forcing Plaintiff's resignation so that Defendant would not have to provide Plaintiff with her leave.

82.

Defendant engaged in prohibited conduct by terminating Plaintiff's employment on pretextual grounds to avoid having to provide Plaintiff with leave.

83.

Defendant's conduct was willful and malicious.

84.

As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff sustained loss of earnings, suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and the loss of professional reputation.

85.

Pursuant to 29 U.S.C. § 2617(a)(1)(A)(i), Defendant is liable for damages equal to the amount of wages, salary, employment benefits, and other compensation denied or lost to Plaintiff by reason of this violation, in an amount to be proven at trial.

86.

Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), due to Defendant's willful violation of the Act and reckless disregard of whether Defendant's conduct was prohibited, Defendant is liable for an additional amount as liquidated damages, equal to the sum of the amount described in Paragraph 102, *supra*, in an amount to be proven at trial.

87.

Pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii), Defendant is liable for interest on the amount described in Paragraph 102, *supra*, calculated at the prevailing rate, and in an amount to be proven at trial.

88.

Pursuant to 29 U.S.C. § 2617(a)(1)(B), Defendant is liable for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

## COUNT III:
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

89.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 59, as if the same were set forth herein.

90.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

91.

Discrimination based on disability includes an employer's failure to make a "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

92.

As alleged herein, Defendant and Plaintiff are a covered, nonexempt employer and non-exempt employee under the ADA, respectively. *See* 42 U.S.C. § 12111.

93.

As alleged herein, Plaintiff was hired as a cashier in 2015, had been performing her duties in that role, and was otherwise qualified and able to perform the essential functions of her job, with or without a reasonable accommodation.

94.

As alleged herein, Plaintiff has a disability, a history of a disability, and was perceived by Defendant as having a disability, that substantially limits a number of major life activities. Specifically, Plaintiff was pregnant and had a variety of symptoms arising from her pregnancy all individually and in the aggregate substantially limit several major life activities for Plaintiff, including her ability to sleep, her ability to maintain sufficient nutrition, her ability to lift heavy objects, and her ability to stand for long periods of time.

95.

Plaintiff was perceived as having a disability by Defendant when they became aware that Plaintiff was pregnant, when Plaintiff notified Defendant she would need to take maternity leave in or about April 2019, and when Plaintiff requested the reasonable accommodation of being scheduled for light duty work during the later terms of her pregnancy.

96.

Plaintiff requested an accommodation for her disability on a number of occasions. Specifically, Plaintiff requested that she be permitted to work light duty.

97.

The accommodation requested was available, would have been effective, and would not have posed an undue hardship on Defendant. Moreover, the requested accommodation of allowing light duty work for Plaintiff would have allowed Plaintiff to meet Defendant's performance and productivity metrics and all other essential job functions.

98.

Defendant not only refused to provide the accommodation, but Defendant also responded by intentionally reducing the work hours available to Plaintiff.

99.

Plaintiff has been injured by Defendant's discrimination due to its failure to provide a reasonable accommodation, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including compensatory damages, reinstatement, backpay, injunctive relief, punitive damages, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial.

**COUNT IV:**
**DISCRIMINATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT**

100.

Plaintiff herby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 59, as if the same were set forth herein.

101.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other

terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

102.

Discrimination based on disability includes an employer's termination of the employee due to her disability. 42 U.S.C. § 12111.

103.

As alleged herein, Plaintiff has a disability, a history of a disability, and was perceived by Defendant as having a disability, that substantially limits a number of major life activities. Specifically, Plaintiff was pregnant and had a variety of symptoms arising from her pregnancy all individually and in the aggregate substantially limit several major life activities for Plaintiff, including her ability to sleep, her ability to maintain sufficient nutrition, her ability to lift heavy objects, and her ability to stand for long periods of time.

104.

Plaintiff was perceived as having a disability by Defendant when they became aware that Plaintiff was pregnant, when Plaintiff notified Defendant that she would need to take maternity leave in or about April 2019, and when Plaintiff requested the reasonable accommodation of being scheduled for physically light duty work during the later terms of her pregnancy.

105.

As alleged herein, Plaintiff was hired as a cashier in 2015, had been performing her duties in that role, and was otherwise qualified and able to perform the essential functions of her job, with or without reasonable accommodation.

106.

Defendant terminated Plaintiff in February 2019, and Plaintiff was replaced with an employee who was not pregnant and who did not have a disability. The circumstances suggest that

Plaintiff was terminated, not as a result of her conduct violation, but due to her disability or requests for an accommodation for said disability.

107.

Plaintiff has been injured by Defendant's discrimination due to her disability, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including compensatory damages, reinstatement, backpay, injunctive relief, punitive damages, and reasonable attorneys' fees and costs of litigation, in an amount to be proven at trial.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Amanda Hettinga respectfully prays for the following relief:

1) That Summons and Process be issued to Defendant The Kroger Co., and that said Defendant be served as provided by law;

2) That this matter be tried before a jury;

3) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for discrimination based on sex and pregnancy, and grant Plaintiff all relief allowable under Title VII of the Civil Rights Act;

4) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count II for violation of the Family and Medical Leave Act and grant Plaintiff all relief allowable under said statute;

5)	That judgment be awarded for and in favor of Plaintiff and against Defendant on Count III for failure to provide a reasonable accommodation in violation of the Americans with Disabilities Act and grant Plaintiff all relief allowable under said statute;

6)	That judgment be awarded for and in favor of Plaintiff and against Defendant on Count IV for discrimination based on disability, and grant Plaintiff all relief allowable under Americans with Disabilities Act;

7)	That judgment be awarded for and in favor of Plaintiff and against Defendant on Count V for Discrimination in Violation of the Americans with Disabilities Act, and grant Plaintiff all relief allowable under Americans with Disabilities Act;

8)	For such other relief as this Court shall deem just and proper.

Respectfully submitted, this 2nd day of March, 2021.

KENNETH E. BARTON III
Georgia Bar No. 301171
JOHN M. MCCALL
Georgia Bar No. 778954
*Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
jmm@cooperbarton.com